**Leanna MORGAN, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 70–300.**

United States District Court, N. D. Alabama, W. D.

April 5, 1971.

W. O. Kirk, Jr., Curry & Kirk, Carrollton, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., N.D. Alabama, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ALLGOOD, District Judge.

The plaintiff, Leanna Morgan, born September 12, 1907, applied for widow's benefits on March 4, 1968, based on the Social Security earnings record of Jim Morgan. The Secretary denied her claim initially based on a finding that the plaintiff had not been validly married to the wage earner, as is required by Section 202(e) of the Social Security Act, [42 U.S.C. § 402(e)], because she had a prior undissolved marriage. On reconsideration, the Secretary determined that this prior marriage was invalid and would not preclude a common law marriage between the plaintiff and the

wage earner. The Secretary then found that the evidence failed to establish a valid ceremonial or common-law marriage between the plaintiff and the wage earner.

After considering all the evidence of record, including the testimony of plaintiff and her witnesses, the hearing examiner in a decision rendered November 26, 1969, held that Mrs. Morgan was not entitled to widow's benefits. The hearing examiner's decision became the "final decision" of the Secretary when the Appeals Council denied plaintiff's request for review.

Plaintiff brings this action pursuant to the provisions of Section 205(g) of the Social Security Act, as amended, [42 U. S.C. § 405(g)], seeking review by this court of the adverse decision rendered by the Secretary.

In the opinion of this court, there is no substantial credible evidence to support the decision of the Secretary. The plaintiff has met her burden of proving a valid common-law marriage to the wage earner.

It may be that the Secretary is correct in finding no common-law marriage here prior to the death of the deceased wage earner's wife in 1944. However, plaintiff and Jim Morgan continued to live together as man and wife thereafter until his death. The mere fact that they, at the time of the prior wife's death in 1944, discussed a ceremonial marriage has no real bearing on the common law marriage. Plaintiff was asked by the hearing examiner if there was any reason why she and Jim Morgan "did not get into a ceremonial marriage" when they found out that his previous wife had died. She testified as follows (Tr. 44):

"A: We talked it over a lot of times.

"Q: What did he say?

"A: He said, 'Yeah, you be my wife. Fact of the business, *you are already my wife.*' Well, I know I felt that was true, because he couldn't have been no better to me, and the only difference I see, we just had no papers." (Emphasis added.)

It must be remembered that both plaintiff and Jim Morgan were uneducated and that they were living under conditions or in a community where common-law marriages were not infrequent and no social stigma was cast on such marriages.

The Secretary also places strong reliance on the two applications for old-age insurance benefits filed by Jim Morgan, one on April 5, 1957, and the other on September 6, 1957. On both, he answered "No" to the question, "Are you married?".

Plaintiff stated that she was with him when he signed these applications and that they were filled out by the lady in the office (Tr. 48). This could have been an error made by the Clerk or a misunderstanding of the question by Morgan. At any rate, all of the evidence in the case indicates that they continued to live together as man and wife thereafter until Morgan's death. The testimony of plaintiff's daughter is most significant. She stated that he told people that she was his daughter, that he loved her and that she loved him as a natural father, that the people in the community knew this for a period of 28 years. (Tr. 60).

Ruthie Causette testified that she had known Leanna and Jim Morgan prior to 1959, but knew them "real good" since then and "There never was any question in her mind but what they were husband and wife." (Tr. 63–65).

Goodman et al. v. McMillan et al., 258 Ala. 125, 61 So.2d 55 (1952), sets out the rule that each case claiming a common law marriage must be determined on its own particular facts, having regard to the situations of the parties and their status in life. Dicta in this case indicates that the environment, economic and social standings of the parties involved will be carefully weighed in the determination of common law marriage.

Here we have two illiterate people whose environment, economic and social

standings, at best, could be considered to be very low. They have lived together openly as man and wife for 28 years. All of the elements of common law marriage have been met.

■ Where parties who are incompetent to marry enter an illicit relation, with a manifest desire to live in a matrimonial union and the obstacle to their marriage is subsequently removed, their continued cohabitation raises a presumption of an actual marriage immediately after removal of the obstacle and warrants a finding to that effect. There is no established time limit required if other requirements have been met. It has been held that sleeping together for two days is sufficient. Smith v. Smith, 247 Ala. 213, 23 So.2d 605.

■ It is the opinion of this court that the record in this case clearly establishes plaintiff's claim that she is the widow of Jim Morgan by virtue of a common law marriage and as such she is entitled to widow's benefits based on the Social Security earnings record of Jim Morgan for which she filed application on March 4, 1968.